IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01841–EWN–CBS


SANDRA BAFIA,

     Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS, WASHINGTON COUNTY, COLORADO,
in their official and individual capacities;
BOARD OF COUNTY COMMISSIONERS, BOULDER COUNTY, COLORADO,
in their official and individual capacities;
FORMER BOULDER COUNTY SHERIFF GEORGE EPP,
in his official and individual capacity;

     Defendants.

---

### ORDER AND MEMORANDUM OF DECISION

---

This is a civil rights case arising under 42 U.S.C.A. § 1983 (2005) ("section 1983").

Plaintiff Sandra Bafia alleges that Defendants Boulder County Board of County Commissioners,

former Boulder County Sheriff George Epp (together, "Boulder Defendants"), and Washington

County Board of County Commissioners ("Defendant Washington County") violated her

constitutional rights by failing to provide medical care and failing to supervise and train employees

adequately.  In addition, Plaintiff seeks punitive damages.  This matter is before the court on: (1)

Defendant Washington County's "Motion for Summary Judgment," filed May 3, 2005, and (2)

-1-

"Boulder County Defendants' Motion for Summary Judgment and Supporting Brief," filed May 3,

2005.  Jurisdiction is premised upon 28 U.S.C.A. §§ 1331 and 1343 (2005).

## FACTS

*1.*    *Factual Background*

   *a.*      *Plaintiff's Initial Arrest*

On June 23, 2002, Plaintiff was arrested and charged with domestic violence.  (Boulder

County Defs.' Mot. for Summ. J. and Supporting Br., Statement of Undisputed Material Facts ¶ 1

[filed May 3, 2005] [hereinafter "Boulder Defs.' Br."]; *admitted at* Resp. to Def. Boulder

County's Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 1 [filed June 6,

2005] [hereinafter "Pl.'s Boulder Resp."].)  On June 26, 2002, Plaintiff was released on bond

from the Boulder County jail with a condition of no contact with the victim, James Bafia.  (*Id.*,

Statement of Undisputed Material Facts ¶ 2; *admitted at* Pl.'s Boulder Resp., Resp. to Statement

of Undisputed Material Facts ¶ 2.)  On July 5, 2002, James Bafia was arrested for third degree

assault for domestic violence against Plaintiff.  (*Id.*, Statement of Undisputed Material Facts ¶ 3;

*admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)  On the

same date, Plaintiff was arrested and taken into custody at the Boulder County jail for violating

her bond conditions by having contact with James Bafia.  (*Id.*, Statement of Undisputed Material

Facts ¶ 4; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.)

On July 5, 2002, upon Plaintiff's intake at the Boulder County jail, a nurse examined

Plaintiff and noted that she had "ecchymosis around right eye and vision distorted in left eye."[1]

_____

[1]Ecchymosis is an area of discoloration of the skin caused by an escape of blood from
small blood vessels into surrounding tissue.  2-E Attorneys' Dictionary of Medicine 179 (Matthew
Bender 2005).

(*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)  On July 9, 2002, Dr. Karl Schlegel examined Plaintiff and noted her complaints of distorted vision in her left eye.  (*Id.*, Statement of Undisputed Material Facts ¶ 6, Ex. 6 at 60–61 [Dep. of Karl Schegel, M.D.]; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 6.)

On July 11, 2002, Plaintiff received a sentence of ninety days in jail and was placed on work release.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 7, 9; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 7, 9.)  She walked away from custody on July 16, 2002.  (*Id.*)  Boulder County officials issued a warrant for Plaintiff based on her escape from work release.  (*Id.*, Statement of Undisputed Material Facts ¶ 9; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.)  Similarly, on July 11, 2002, James Bafia received a sentence of two-hundred-ten days in jail and was placed on work release.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 8, 10; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 8, 10.)  He walked away from custody on July 16, 2002.  (*Id.*)  Boulder County officials issued a warrant for James Bafia based on his escape from work release.  (*Id.*, Statement of Undisputed Material Facts ¶ 10; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 10.)

Plaintiff and James Bafia subsequently took Plaintiff's parents' truck without permission. (*Id.*, Statement of Undisputed Material Facts ¶ 11; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 11.)  Plaintiff's parents reported the truck as stolen. (*Id.*)  On July 26, 2002, a law enforcement officer stopped Plaintiff and James Bafia in Plaintiff's parents' truck in Washington County, Colorado.  (*Id.*, Statement of Undisputed Material Facts ¶

12; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.)  The

truck contained ingredients and items associated with the manufacture of methamphetamine,

including boxes of Sudaphedrine, lye, red phosphorous, iodine, muriatic acid, coffee filters, and a

stove.  (*Id.*, Statement of Undisputed Material Facts ¶ 13; *admitted at* Pl.'s Boulder Resp., Resp.

to Statement of Undisputed Material Facts ¶ 13.)  Plaintiff was arrested on the outstanding

warrant against her.  (*Id.*, Statement of Undisputed Material Facts ¶ 14, Ex. 14 [Washington

County Case Report]; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed

Material Facts ¶ 14.)  She was charged with aggravated motor vehicle theft and possession with

intent to manufacture methamphetamine.  (*Id.*)  Plaintiff was subsequently transported to the

Washington County jail.  (Compl. ¶ 9 [filed Sept. 3, 2004] [hereinafter "Compl."]; Br. in Supp. of

Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 11 [filed May 3, 2005] [hereinafter

["Def. Washington's Br."]; *admitted at* Resp. to Def. Washington County's Mot. for Summ. J.,

Resp. to Statement of Undisputed Material Facts ¶ 11 [filed May 23, 2005] [hereinafter "Pl.'s

Washington Resp."].)

### b.  *Washington County Jail*

Plaintiff is hypoglycemic.  (Pl.'s Washington Resp., Statement of Additional Disputed

Facts ¶ 3; *admitted at* Reply in the Matter of Def. Washington County, Colo.'s Mot. for Summ.

J., Resp. Concerning Disputed Facts ¶ 3 [filed June 3, 2005] [hereinafter "Def. Washington's

Reply"].)  While in custody at the Washington County jail, Plaintiff had difficulty maintaining her

blood sugar at proper levels.  (*Id.*)  In August 2002, Plaintiff began to have visual disruptions in

her right eye.  (Compl. ¶ 9.)  Plaintiff complained about her eyesight to Washington County jail

staff in August and September of 2002.  (Pl.'s Washington Resp., Statement of Additional

Disputed Facts ¶ 5; *admitted at* Def. Washington's Reply, Resp. Concerning Disputed Facts ¶ 5.) Plaintiff advised a staff nurse at the Washington County jail that her vision problems were likely related to her hypoglycemia. (*Id.*, Statement of Additional Disputed Facts ¶ 4; *admitted at* Def. Washington's Reply, Resp. Concerning Disputed Facts ¶ 4.)

Plaintiff asserts that, while in custody, she submitted over thirty request slips, or "kites," to the Washington County jail staff complaining of her eye problems. (*Id.*, Statement of Additional Disputed Facts ¶ 2.) Defendant Washington County maintains that during her incarceration, Plaintiff submitted sixty-nine "kites" to its staff, but only mentioned problems with her eyesight in five of the "kites." (Def. Washington's Reply, Resp. Concerning Disputed Facts ¶ 2, Ex. C at 1–69 [Washington County Inmate Request Forms].) On one occasion during her period of incarceration, Plaintiff met with Washington County Sheriff English. (Pl.'s Washington Resp., Statement of Additional Disputed Facts ¶ 10; *admitted at* Def. Washington's Reply, Resp. Concerning Disputed Facts ¶ 10.) At that meeting, Sheriff English told Plaintiff that she would not be able to visit a doctor. (*Id.*, Statement of Additional Disputed Facts ¶ 12; *admitted at* Def. Washington's Reply, Resp. Concerning Disputed Facts ¶ 12.)

On or about September 20, 2002, Plaintiff visited Dr. Robert Fillion. (*Id.*, Statement of Additional Disputed Facts ¶ 13; *admitted at* Def. Washington's Reply, Resp. Concerning Disputed Facts ¶ 13.) Dr. Fillion diagnosed Plaintiff with "possible insulinoma" and noted that Plaintiff had "a grade [two] Keith-Wagner retinopathy noted bilaterally." (Boulder Defs.' Br., Statement of Undisputed Material Facts ¶ 15; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 15; *see also* Pl.'s Washington Resp., Statement of Additional Disputed Facts ¶ 17, Ex. 2 [9/20/2002 Washington County Clinic Report]; *admitted at* Def.

Washington's Reply, Resp. Concerning Disputed Facts ¶ 17.)  Further, Dr. Fillion suggested that

Plaintiff be "transferred as soon as possible to a larger prison system with medical facilities for

nuclear imaging confirmation and assessment of her visual field defects and hypoglycemic

episodes."  (Pl.'s Washington Resp., Statement of Additional Disputed Facts ¶ 18, Ex. 2

[9/20/2002 Washington County Clinic Report]; *admitted at* Def. Washington's Reply, Resp.

Concerning Disputed Facts ¶ 18.)

Plaintiff testified that in late September 2002, after a preliminary hearing in Washington

County Court, the judge in the case dropped the outstanding criminal charges against Plaintiff.

(Boulder Defs.' Br., Statement of Undisputed Material Facts ¶ 16, Ex. 16 at 299–302 [Sandra

Bafia Dep.]; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶

16.)  Plaintiff remained in custody at the Washington County jail until October 2, 2002, when

officials transferred her to the Boulder County jail, due to outstanding warrants against her in

Boulder County.  (Def. Washington's Br., Statement of Undisputed Material Facts ¶ 12; *admitted*

*at* Pl.'s Washington Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.)

### c.    *Boulder County Jail*

On October 2, 2002, Boulder County jail officials performed a medical intake screening on

Plaintiff, in which Plaintiff reported the following medical problems: "lower blood sugar, eyes,

kidney . . .  [t]eeth — needs denture adhesive."  (Boulder Defs.' Br., Statement of Undisputed

Material Facts ¶ 18, Ex. 18 [Boulder County Jail Medical Intake Screening]; *admitted at* Pl.'s

Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 18.)  On October 8, 2002,

Plaintiff appeared in Boulder County Court represented by court-appointed attorney Ingrid

DeFranco.  (*Id.*, Statement of Undisputed Material Facts ¶ 20; *admitted at* Pl.'s Boulder Resp.,

Resp. to Statement of Undisputed Material Facts ¶ 20.)  Plaintiff pled guilty to escape, and received a sentence of ninety days of incarceration on the original charge of domestic violence and thirty days for escape.  (*Id*.)  Additionally during the October 8, 2002 court proceedings, Plaintiff's attorney presented the court with a copy of Dr. Fillion's prescription form for Plaintiff, in which he recommended that she receive "small feedings [five] times daily, [and] avoid sweets." (*Id*., Statement of Undisputed Material Facts ¶ 22; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 22.)  On October 9, 2002, the Boulder County jail implemented the special diet Dr. Fillion prescribed for Plaintiff.  (*Id*., Statement of Undisputed Material Facts ¶ 23; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 23.)

Plaintiff submitted "kites" regarding her eyes and eyesight on October 11, 2002, October 15, 2002, October 18, 2002, October 26, 2002, and October 31, 2002.  (*Id*., Statement of Undisputed Material Facts ¶ 45; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 45.)  Between October 2002 and November 2002, Dr. Schlegel examined Plaintiff four times.  (*Id*., Statement of Undisputed Material Facts ¶ 24; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 24.)  On October 10, 2002, Dr. Schlegel noted that Plaintiff "claimed right temporal vision loss," ordered lab tests to be performed on Plaintiff, and ordered Plaintiff's prior medical records.  (*Id*., Statement of Undisputed Material Facts ¶ 25; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 25.)  On October 17, 2002, Dr. Schlegel examined Plaintiff and noted that her case was "difficult" and Plaintiff "display[ed] no evidence" of the rapidly impending blindness and inability to see out of her right eye of which she complained.  (*Id*., Statement of

Undisputed Material Facts ¶ 27, Ex. 27 [Progress Notes]; *admitted at* Pl.'s Boulder Resp., Resp.

to Statement of Undisputed Material Facts ¶ 27.)  Specifically, Dr. Schlegel noted that a retinal

examination of Plaintiff was unremarkable and Plaintiff: (1) was able to move briskly through a

narrow doorway with protruding furniture without hitting her body; (2) did not make attempts to

feel her way or steady her path; (3) was able to follow him with conjugate movement in a

darkened room despite covering either eye; and (4) had requested to be released to full work

status in order to earn good time.  (*Id.*)  Dr. Schlegel also admitted that: (1) the symptoms of

which Plaintiff complained were consistent with those of a detached retina, and (2) he did not

dilate Plaintiff's eye in examining her retina.  (Pl.'s Boulder Resp., Statement of Additional

Disputed Facts. ¶¶ 18, 22, Ex. 4 at 17–21, 67; *admitted at* Boulder County Defs.' Reply to Pl.'s

Resp. to Mot. for Summ. J., Resp. Concerning Disputed Facts ¶¶ 18, 22 [filed June 6, 2005]

[hereinafter "Boulder Defs.' Reply"].)

On October 22, 2002, October 24, 2002, and October 29, 2002, Dr. Schlegel reviewed

Plaintiff's blood test results and medical records.  (Boulder Defs.' Br., Statement of Undisputed

Material Facts ¶¶ 28, 29; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed

Material Facts ¶ 28, 29.)  On October 24, 2002, Dr. Schlegel ordered that Plaintiff be examined

by an eye specialist.  (*Id.*, Statement of Undisputed Material Facts ¶ 30; *admitted at* Pl.'s Boulder

Resp., Resp. to Statement of Undisputed Material Facts ¶ 30.)  On October 29, 2002, Plaintiff

visited Dr. Marilyn Dougherty, an eye specialist.  (Pl.'s Washington Resp., Statement of

Additional Disputed Facts ¶ 22; *admitted at* Def. Washington's Reply, Resp. Concerning

Disputed Facts ¶ 22; *see also* Boulder Defs.' Br., Statement of Undisputed Material Facts ¶ 31;

*admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 31.)  Dr.

Dougherty diagnosed Plaintiff as having a detached retina, stated that Plaintiff was close to losing her eyesight, and recommended that Plaintiff visit a surgeon within twenty-four hours. (Pl.'s Washington Resp., Statement of Additional Disputed Facts ¶ 23; *admitted at* Def. Washington's Reply, Resp. Concerning Disputed Facts ¶ 23; *see also* Boulder Defs.' Br., Statement of Undisputed Material Facts ¶ 32; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 32.) On October 30, 2002, Plaintiff visited Dr. William Benedict, who opined that Plaintiff should undergo surgery within ten to fourteen days. (Pl.'s Washington Resp., Statement of Additional Disputed Facts ¶¶ 27, 29; *admitted at* Def. Washington's Reply, Resp. Concerning Disputed Facts ¶¶ 27, 29.) Dr. Benedict scheduled Plaintiff's eye surgery for November 11, 2002, and scheduled a post-operative appointment for November 12, 2002. (Boulder Defs.' Br., Statement of Undisputed Material Facts ¶¶ 35, 36; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 35, 36.) On November 5, 2002, Dr. Schlegel performed a pre-operation physical examination on Plaintiff. (*Id*., Statement of Undisputed Material Facts ¶ 37; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 37.) Boulder Defendant Sheriff Epp did not personally participate in any decision regarding Plaintiff's medical care while she was in custody at the Boulder County jail. (*Id*., Statement of Undisputed Material Facts ¶ 47; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 47.)

On November 7, 2002, pursuant to her own request, Plaintiff appeared in Boulder County Court. (*Id*., Statement of Undisputed Material Facts ¶ 38; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 38.) A Boulder County Court judge granted Plaintiff credit for the time she had served in the Washington County jail, and ordered that Plaintiff be

released on November 10, 2002.  (*Id*., Statement of Undisputed Material Facts ¶ 39; *admitted at* Pl.'s Boulder Resp., Resp. to Statement of Undisputed Material Facts ¶ 39.)

On November 11, 2002, Dr. Benedict performed surgery on Plaintiff's retina.  (Pl.'s Washington Resp., Statement of Additional Disputed Facts ¶ 31; *admitted at* Def. Washington's Reply, Resp. Concerning Disputed Facts ¶ 31.)  Plaintiff's post-operative visual acuity is 20/400. (*Id*., Statement of Additional Disputed Facts ¶ 33; *admitted at* Def. Washington's Reply, Resp. Concerning Disputed Facts ¶ 33.)

**2.**     ***Procedural History***

On September 3, 2004, Plaintiff filed a complaint in this court asserting two claims pursuant to section 1983: (1) against Boulder Defendants and Defendant Washington County (collectively, "Defendants") for failure to provide medical care and treatment in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments; and (2) against Boulder Defendant Sheriff Epp for failure to train and supervise employees in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments.[2]  (Compl. ¶¶ 24–44.)

On December 2, 2004, Defendant Washington County concurrently filed: (1) a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(h)(2) to dismiss Plaintiff's claims for failure to state a claim, and (2) a motion to stay discovery pending resolution of its motion to dismiss.  (Mot. to Dismiss and to Stay Disc. [filed Dec. 2, 2004].)  On December 7, 2004, I denied the concurrent motions for failure to comply with Local Rule 7.1.  (Order [filed Dec. 7, 2004].)  On December 8, 2004, Defendant Washington County filed amended motions to

---

[2]Several parties have been dismissed from this action with prejudice.  Accordingly, in the interest of clarity, I have omitted dismissed parties in describing submissions filed in this case.

dismiss and to stay discovery.  (Am. Mot. to Dismiss and to Stay Disc. [filed Dec. 8, 2004].)

Also on December 8, 2004, Plaintiff filed a response to Defendant Washington County's amended

motion to dismiss.  (Resp. to Def. Board of County Commissioners of Washington County's Mot.

to Dismiss [filed Dec. 8, 2004].)  Plaintiff did not file a response to Defendant Washington

County's amended motion to stay discovery.  Defendant Washington County did not file reply

briefs in support of either its motion to dismiss or its motion to stay discovery.  On October 28,

2005, I denied Defendant Washington County's motions.  (Order and Mem. of Decision [filed

Oct. 28, 2005] [hereinafter "October 28, 2005 Order"].)

On December 9, 2004, Boulder Defendants concurrently filed: (1) an answer to Plaintiff's

complaint on behalf of Boulder Defendant Sheriff Epp in his official capacity, and (2) a motion to

dismiss Plaintiff's claims against Boulder Defendant Sheriff Epp in his individual capacity and

Boulder Defendant Boulder County Board of County Commissioners under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.  (County Defs.'

Answer and Mot. to Dismiss [filed Dec. 9, 2004].)  On December 30, 2004, Plaintiff responded to

Boulder Defendants' motion to dismiss.  (Pl.'s Resp. to Boulder County Defs.' Mot. to Dismiss

[filed Dec. 30, 2004].)  On January 18, 2005, Boulder Defendants filed a reply brief in support of

their motion to dismiss.  (Boulder County Defs.' Reply to Pl.'s Resp. to Mot. to Dismiss [filed Jan

18, 2005].)  On October 28, 2005, I denied Boulder County Defendants' motion.  (October 28,

2005 Order.)

Pursuant to the scheduling order filed December 13, 2004, the deadline for submitting Federal Rule of Civil Procedure 26(a)(2) expert disclosures was February 21, 2005.[3] (Scheduling Order [filed Dec. 13, 2004].)  On February 22, 2005, Plaintiff filed a motion to extend the Rule 26(a)(2) disclosure deadlines.  (Pl.'s Mot. to Extend Deadline for Submitting Rule 26(a)(2) Disclosures [filed Feb. 22, 2005].)  Plaintiff asserted that she wished to endorse Dr. Benedict as an expert witness in this case, and needed additional time in which to submit her Rule 26(a)(2) disclosures because she had not yet obtained a report from Dr. Benedict.  (*Id.*)  On February 28, 2005, Defendants filed a joint response to Plaintiff's motion.  (Defs.' Obj. to Pl.'s Mot. to Extend Deadline for Submitting Rule 26(a)(2) Disclosures [filed Feb. 28, 2005].)  On March 22, 2005, Magistrate Judge Shaffer held a hearing on Plaintiff's motion to extend.  (Mins. [filed Mar. 22, 2005])  On March 25, 2005, Magistrate Judge Shaffer filed an order denying Plaintiff's motion for lack of good cause.  (Order [filed Mar. 25, 2005.)

On April 5, 2005, Plaintiff filed a motion to review Magistrate Judge Shaffer's order. (Pl.'s Mot. for Review of Magistrate Judge's Order Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72[a] [filed Apr. 5, 2005].)  On April 22, 2005, Defendants filed a joint response to Plaintiff's motion.  (Defs' Resp. to Pl.'s Mot. for Review of Magistrate Judge's Order Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72[a] [filed Apr. 22, 2005].)  On May 9, 2005, Plaintiff filed a reply in support of her motion.  (Reply to Defs' Resp. to Pl.'s Mot. for Review of Magistrate Judge's Order Pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72[a] [filed Apr. 22, 2005].)

---

[3]February 21, 2005 was a federal holiday, thus the Rule 26(a) disclosure deadline was, in effect, February 22, 2005.  (Scheduling Order [filed Dec. 13, 2004].)

On March 1, 2005 and March 30, 2005, respectively, Plaintiff filed unopposed motions to dismiss with prejudice: (1) Defendant Boulder County Deputy Fournet; and (2) Defendants Washington County Sheriff English, Washington County Deputies Marsha Traxler and Barbra Vanwinckle, Boulder County Deputy Ray Romano, Boulder County Jail Nurse "Bill" L.N.U., John Doe Boulder County Sheriff's Deputies, and John Doe Washington County Sheriff's Deputies. (Unopposed Mot. to Dismiss Def. Fournet with Prejudice [filed Mar. 1, 2005]; Unopposed Mot. To Dismiss Defs. English, Traxler, Vanwinckle, Romano, L.N.U., John Doe Boulder County Sheriff Deputies and John Doe Washington County Deputies with Prejudice [filed Mar. 30, 2005].) On March 10, 2005 and April 7, 2005, respectively, I granted Plaintiff's motions. (Order of Dismissal with Prejudice [filed Mar. 10, 2005]; Order of Dismissal with Prejudice [filed Apr. 7, 2005].)

On May 3, 2005, Defendant Washington County filed a motion for summary judgment in this court. (Def. Washington's Br.) Defendant Washington County argues that Plaintiff cannot maintain her claim against it because: (1) Defendant Washington County is not liable for the actions of the County Sheriff or the Sheriff's deputies, and (2) Plaintiff has failed to identify a policy or custom that caused the alleged deprivation of her rights. (Id. at 3–7.) On May 23, 2005, Plaintiff filed a response to Defendant Washington County's Motion. (Pl.'s Washington Resp.) On June 3, 2005, Defendant Washington County filed a reply in support of its motion. (Def. Washington's Reply.) This matter is fully briefed.

Also on May 3, 2005, Boulder Defendants filed a motion for summary judgment in this court. (Boulder Defs.' Br.) Boulder Defendants argue that Plaintiff cannot maintain her claims because: (1) Boulder Defendant Sheriff Epp has no liability in either his individual or official

capacity, and (2) Plaintiff cannot demonstrate an act by or policy of Boulder Defendant Boulder County Board of County Commissioners that caused the alleged deprivation of her rights.  (*Id.* at 10–14.)  On June 6, 2005, Plaintiff filed a response to Boulder Defendants' motion.  (Pl.'s Boulder Resp.)  On June 21, 2005, Boulder Defendants filed a reply in support of its motion. (Boulder Defs.' Reply.)  This matter is fully briefed.

On June 3, 2005, Defendants filed a joint motion to strike one of Plaintiff's exhibits to her response to Defendant Washington County's motion for summary judgment.  (Defs.' Joint Mot. to Strike Pl.'s Ex. #8 to Her Resp. to Def. Washington County's Mot. for Summ. J. [filed June 3, 2005].)  The exhibit in question was a letter dated March 17, 2005 from Dr. Benedict, Plaintiff's treating physician and the expert for whom Plaintiff attempted to receive an enlargement of time for Rule 26(a)(2) disclosures.  (Pl.'s Washington Resp., Ex. 8 [3/17/2005 Letter].)  On June 22, 2005, Plaintiff filed a response to Defendants' joint motion.  (Pl.'s Resp. to Defs.' Joint Mot. to Strike Pl.'s Ex. #8 to Her Resp. to Def. Washington County's Mot. for Summ. J. [filed June 22, 2005].)  On July 1, 2005, Defendants filed a reply in support of their motion.  (Defs.' Combined Reply to Pl.'s Resps. to Defs.' Joint Mots. to Strike [filed July 1, 2005] [hereinafter "Combined Reply"].)

On June 21, 2005, Boulder Defendants and Defendant Washington County filed a joint motion to strike two of Plaintiff's exhibits to her response to Boulder Defendants' motion for summary judgment.  (Defs.' Joint Mot. to Strike Pl.'s Exs. #6 and #9 to Her Resp. to Mot. for Summ. J. [filed June 21, 2005].)  The exhibits Defendants sought to strike were: (1) a letter dated March 17, 2005 from Dr. Benedict, the same document attached to Plaintiff's response to Defendant Washington County's motion for summary judgment at exhibit eight, and (2) a letter

dated April 18, 2005 from Dr. Benedict.  (Pl.'s Boulder Resp., Ex. 6 [4/18/2005 Letter], Ex. 9

[3/17/2005 Letter].)  On June 22, 2005, Plaintiff filed a response to Defendants' joint motion.

(Pl.'s Resp. to Defs.' Joint Mot. to Strike Pl.'s Exs. #6 and #9 to Her Resp. to Mot. for Summ. J.

[filed June 21, 2005].)  On July 1, 2005, Defendants filed a reply in support of their motion.

(Combined Reply.)

On October 28, 2005, I held a hearing regarding Defendants' motions to strike, at which I

adopted as the ruling of this court Magistrate Judge Shaffer's March 25, 2005 order denying an

extension of time of the Rule 26(a)(2) disclosure deadline.  (Mins. [filed Oct. 28, 2005].)

Accordingly, for the purposes of this Order, I do not consider either of Dr. Benedict's letters —

offered as Plaintiff's exhibit eight to her response to Boulder Defendants' motion for summary

judgment and Plaintiff's exhibits six and nine to her response to Defendant Washington County's

motion for summary judgment — in my analysis.

## ANALYSIS

### 1.    *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2005); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.

v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P.

56(e) (2005).  A fact in dispute is "material" if it might affect the outcome of the suit under the

governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury

to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when

ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d

1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment.  *Byers v. City of

Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## 2.   *Evaluation of Claims*

Plaintiff alleges two civil rights claims under section 1983 in this case: (1) against all

Defendants for failure to provide medical care and treatment with deliberate indifference to and in

violation of Plaintiff's rights under the Eighth and Fourteenth Amendments; and (2) against

Boulder Defendant Sheriff Epp for failure to train and supervise employees with deliberate

indifference to and in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments.[4]

---

[4]As I noted in my October 28, 2005 order denying Defendants' motions to dismiss, whether a plaintiff's claims are properly styled as violations of the Eighth or Fourteenth Amendment depends on the plaintiff's procedural status at the time of the alleged violation. (October 28, 2005 Order at 8 n.5.)  The due process clause of the Fourteenth Amendment protects pre-trial detainees, while the Eighth Amendment prohibition against cruel and unusual punishment protects convicted inmates.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (citing *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 [10th Cir. 1999]); *Martin v. Board*

(Compl. ¶¶ 24–44.)  Section 1983 provides a remedy for constitutional violations committed by state actors or by private actors under color of state law.  *See* 42 U.S.C.A. § 1983 (2005). Specifically, section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  Thus, to establish a violation of section 1983, Plaintiff must allege that: (1) Defendants acted under color of state law to deprive her of a right, and (2) the right of which Defendants deprived her was secured by the Constitution or the laws of the United States.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  Defendants do not address, and therefore necessarily do not dispute, Plaintiff's assertions that Defendants are state actors and the Constitution protects the rights allegedly violated in this case.  (Compl. ¶¶ 25, 28.)  With these general considerations in mind, I address Plaintiff's claims in further detail below.

### a.        *Failure to Provide Medical Care — All Defendants*

Defendants argue that they are entitled to summary judgment on Plaintiff's claim that they violated her constitutional rights by failing to provide her with medical care.  (Boulder Defendants' Br. at 10–14; Def. Washington County's Br. at 3–7.)  The right to custodial medical care is clearly established under the Constitution.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

---

*of County Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990).  The parties do not raise this issue in their submissions, and the distinction is ultimately of little importance, because courts apply "identical" analysis in Fourteenth and Eighth Amendment cases brought pursuant to section 1983. *Olsen*, 312 F.3d at 1315.  As such, I decline to analyze proper amendment choice and look to the substance of Plaintiff's claims over their form.

To support her claim for failure to provide medical treatment, Plaintiff must demonstrate that Defendants committed "acts or omissions sufficiently harmful to evidence deliberate indifference to [Plaintiff's] serious medical needs."  *Id.* at 104; *Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986).  Plaintiff alleges that all Defendants: (1) had a custom, policy, or practice of denying medical care to inmates at the Washington County and Boulder County jails; and (2) violated Plaintiff's constitutional rights by denying her medical care for her eye condition.  (Compl. ¶¶ 24–34.)  Defendants argue that Plaintiff cannot maintain her claim against either Defendant Washington County or Boulder Defendant Boulder County Board of County Commissioners because she cannot establish a county act, custom, or policy sufficient to create liability.  (Def. Washington County's Br. at 3–7; Boulder Defs.' Br. at 10–14.)  Additionally, Boulder Defendants argue Plaintiff cannot maintain her claim against Boulder Defendant Sheriff Epp because she cannot establish that Boulder Defendant Sheriff Epp or any of his employees acted with deliberate indifference.  (Boulder Defs.' Br. at 10–14.)  I address Plaintiff's claim with respect to each Defendant in detail below.

### i. *Defendant Washington County*

Plaintiff alleges that Defendant Washington County had a custom, policy, or practice of acting with deliberate indifference by denying "obviously necessary" medical care to inmates at the Washington County jail and deprived her of her right to medical care by failing to examine, treat, and care for her eye condition.  (Compl. ¶¶ 24–34.)  Defendant Washington County underscores that Plaintiff's alleged harm, and therefore her claim, arises out of the Washington County Sheriff's and Sheriff's deputies' conduct during Plaintiff's confinement in the Washington County jail and argues that it is entitled to summary judgment because Plaintiff cannot

demonstrate that: (1) it is liable for the actions of the Washington County Sheriff, (2) the

Washington County Sheriff's actions were pursuant to official municipal custom or policy, or (3)

the Washington County Sheriff's actions deprived Plaintiff of her rights.  (Def. Washington

County's Br. at 4.)

Defendant Washington County contends that it is not liable for Plaintiff's injuries because

the Washington County Sheriff was responsible for the operation of the Washington County jail

and, under Colorado law, County Sheriffs are responsible for their own and their deputies'

actions.  *See* Colo. Rev. Stat. § 30–10–506 (2005).  Plaintiff asserts her claims against the

members of Defendant Washington County in both their individual and official capacities.

(Compl.)  With respect to individual capacity liability, Defendant Washington County's argument

is sound, but, as to official capacity liability, Defendant Washington County's argument collapses

on its own logic.

First, section 1983 does not provide for liability under the theory of *respondeat superior*.

*See Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000).  To establish supervisory liability,

Plaintiff must demonstrate that "an affirmative link exists between the [constitutional] deprivation

and either the supervisor's personal participation, [] exercise of control, or [] failure to supervise."

*Id.* (citing *Meade v. Grubbs*, 841 F.2d 1512, 1527).  Here, Plaintiff has provided no evidence to

establish Defendant Washington County's individual involvement in the instant case, much less

link the involvement to her alleged deprivation.  Rather, Plaintiff names Defendant Washington

County based on the acts of county employees.  (Pl.'s Washington Resp. at 7.)  Accordingly,

Defendant Washington County is entitled to summary judgment as to Plaintiff's first claim against

it in its individual capacity.

With respect to Defendant Washington County's official capacity liability, municipalities can be sued for monetary, declaratory, or injunctive relief for deprivations of constitutional or civil rights under section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipal liability is limited to deprivations of federally protected rights caused by actions taken pursuant to official municipal policy or custom, and "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action taken." *Pembauer v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell*, 436 U.S. at 691; *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). The parties do not dispute that the Sheriff of Washington County is responsible for the operation of the Washington County jail. (Def. Washington's Br., Statement of Undisputed Material Facts ¶ 9; *admitted at* Pl.'s Washington Resp., Resp. to Statement of Undisputed Material Facts ¶ 9.) It follows logically that the Washington County Sheriff is Washington County's policymaker as to the operation of the Washington County jail. "[P]roof that a municipality's . . . authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Brown*, 520 U.S. at 405. More specifically, case law suggests that counties can be held liable under section 1983 for the misdeeds of Sheriffs and their employees when the Sheriff is the policymaker for the county. *Bristol v. Bd. of County Comm'rs*, 312 F.3d 1213, 1221 (10th Cir. 2002); *see Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1319 (10th Cir. 1998) (citing *Pembauer*, 475 U.S. at 483) (noting county is liable for the constitutional harm arising from Sheriff's actions where the Sheriff's actions and directives represent county policy). Finally, Colorado law requires that a county must be named as "[t]he board of county commissioners of the county" in all proceedings brought against it. *See* Colo.

Rev. Stat. § 30–11–105.  Defendant Washington County is indeed potentially liable for the

Washington County Sheriff's policies and policy-related actions in running the Washington

County jail.  Therefore, I turn to Plaintiff's allegations regarding these policies.

In order to hold a municipality liable for an employee's constitutional violations, Plaintiff

must show that both a constitutional violation occurred and that a municipal policy or custom was

the "moving force" or cause behind the violation.[5]  *Myers,* 151 F.3d at 1320.  Here, Plaintiff states

boldly that she has "demonstrated [Defendant] Washington County's acquiescence in a long

standing practice or custom of withholding necessary medical care and treatment to its inmates"

and that its conduct was the moving force behind her injury.  (Pl.'s Resp at 10.)  Further, Plaintiff

argues "[Defendant] Washington County's decision to do nothing about [Plaintiff's] rapidly

deteriorating vision is enough to establish that ignoring the known and obvious serious medical

needs of inmates was an official policy or custom at the Washington County [j]ail."  (*Id.* at 11.)  I

disagree on both counts.

In support of her argument, Plaintiff asserts the following: (1) Plaintiff testified that the

Washington County jail has a practice of denying inmates medical care; (2) the Washington

County Sheriff and Sheriff's staff failed to obtain medical treatment for Plaintiff's eye problems,

despite her requests, and failed to follow Plaintiff's doctor's orders; and (3) the Washington

---

[5]An unconstitutional deprivation is caused by a municipal "policy" if it results from decisions of an official whose acts may fairly be said to be those of the municipality itself. *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003) (citing *Brown*, 520 U.S. at 403–04).  Courts have interpreted "custom" to mean an act that, although not formally approved by an appropriate decisionmaker, has such widespread practice as to have the force of law.  *Id.*

County Sheriff told Plaintiff that she would not be able to visit a doctor.  (*Id.* at 10–11.)  None of these acts is sufficient to establish a custom or policy of Defendant Washington County.

First, despite Plaintiff's assertion that she testified Washington County jail "had a practice" of withholding medical care from its inmates in order to save money, Plaintiff does not cite to the record to establish that she so testified.  (*Id.* at 11.)  Even if she had, Plaintiff's conclusory allegation is not sufficient to raise a genuine issue of fact as to a constitutional violation.  *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981).

Further, Plaintiff argues that she availed herself of the internal mechanism at the Washington County jail for requesting medical treatment by submitting "kites" to the staff, which the staff repeatedly ignored.  (*Id.* at 11.)  Plaintiff offers no evidence in support of her contentions.  Rather, Defendant Washington County proffers sixty-nine "kites" Plaintiff sent between July 27, 2002 and September 29, 2002.  (Def. Washington's Reply, Ex. C at 1–69 [Washington County Inmate Request Forms].)  Despite Plaintiff's testimony that the majority of the "kites" she wrote related to her vision problems, such issues appear in only five of the "kites." (*Id.*; Pl.'s Washington Resp., Ex. 1 at 262 [Dep. of Sandra Bafia].)  Of those five, two are Plaintiff's complaints about broken glasses and one is Plaintiff's complaint about poor lighting and request for permission to draw pictures in the law library.  (Def. Washington's Reply, Ex. C at 35, 36, 44 [Washington County Inmate Request Forms].)  On August 26, 2002, Plaintiff requested to see a doctor for vision problems in her right eye.  (*Id.* at 39.)  On August 29, 2002, Plaintiff complained that not enough had been done about her vision loss and announced her intention to retract her release of medical information.  (*Id.* at 43.)  Notably, Plaintiff testified that she received medical treatment from the Washington County jail nurse based on her request.  (Pl.'s

Washington Resp., Ex. 1 at 303 [Dep. of Sandra Bafia].)  Further, the parties do not dispute that

Plaintiff visited Dr. Fillion on September 20, 2002.  (Pl.'s Washington Resp., Statement of

Additional Disputed Facts ¶ 13; *admitted at* Def. Washington's Reply, Resp. to Statement of

Additional Disputed Facts ¶ 13.)  Thus, from the evidence on the record, it is patently clear that

Defendant Washington County did not repeatedly ignore Plaintiff's requests.  It is markedly

difficult to glean a custom or policy of refusing medical treatment where medical treatment was

never refused.

　　　Plaintiff's assertion that her position is supported by the Washington County Sheriff's

statement that she would not be able to see a doctor is equally unconvincing.  (Pl.'s Resp. at 11.)

The parties do not dispute that Plaintiff met with the Washington County Sheriff, who told her

that "shit rolls downhill" and she would be able not see a doctor.  (Pl.'s Washington Resp.,

Statement of Additional Disputed Facts ¶ 12, *admitted at* Def. Washington's Reply, Resp. to

Statement of Additional Disputed Facts ¶ 12.)  Indeed, Plaintiff testified that approximately one

week after her meeting with the Sheriff, she visited Dr. Fillion.  (*Id.*, Ex. 1 at 293–94 [Dep. of

Sandra Bafia].)  Again, it is markedly difficult to ascertain a custom or policy of refusal to provide

medical treatment where no such refusal has occurred.

　　　To bolster her argument, Plaintiff also points to Defendant Washington County's actions

after receiving Dr. Fillion's recommendation that Plaintiff be transferred to a "larger prison system

with medical facilities for nuclear imaging confirmation and assessment of her visual field defects

and hypoglycemic episodes."  (Pl.'s Washington Br., Ex. 2 [9/20/2002 Washington County Clinic

Report].)  Plaintiff argues that Defendant Washington County did not take further action to

provide her medical care, did not follow Dr. Fillion's orders, and unceremoniously discharged her

to the custody of the Boulder County jail on October 2, 2002.  (Pl.'s Resp. at 10–11.)  Plaintiff's

argument is perplexing indeed.  First, Plaintiff does not allege — and the "kites" she submitted do

not suggest — that she requested medical care for her eyes after her appointment with Dr. Fillion.

(Pl.'s Washington Resp., *passim*; Def. Washington's Reply, Ex. C at 1–69 [Washington County

Inmate Request Forms].)  It is difficult to ascertain a custom or policy of refusing to provide

medical care where none has been requested.  It still more difficult to understand Plaintiff's

argument that Defendant Washington County failed to comply with Dr. Fillion's orders in light of

Plaintiff's own testimony that she "knew at the time that [the] Boulder [County jail] had a medical

facility and [the] Washington County [jail] doesn't even have that."  (Pl.'s Washington Br., Ex. 1

at 296 [Dep. of Sandra Bafia].)  Based on the foregoing, I find Plaintiff has failed to raise a

genuine issue of material fact as to the existence of a policy or custom of Defendant Washington

County that caused the alleged deprivation of her rights.  Consequently, Defendant Washington

County is entitled to summary judgment on Plaintiff's claim against it.

### ii.      *Boulder Defendant Sheriff Epp in His Individual Capacity*

Plaintiff alleges that Boulder Defendant Sheriff Epp acted with deliberate indifference and

is liable in his individual capacity for Boulder Defendants' failure to provide her medical

treatment.  (Compl. ¶¶ 24–34.)  Boulder Defendants argue that Plaintiff cannot maintain her claim

because she cannot establish that Boulder Defendant Sheriff Epp acted with deliberate

indifference.  (Boulder Defs.' Br. at 10–12.)  Claims alleging inadequate or delayed medical care

with "[d]eliberate indifference" involve an objective and a subjective component.  *Sealock v.*

*Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  In short, in order to maintain her claim, Plaintiff

must establish that the deprivation of her rights was "sufficiently serious" and Boulder Defendant

Sheriff Epp acted "with a sufficiently culpable state of mind." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations omitted).  The objective requirement that deprivation be "sufficiently serious" is satisfied if it is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 [10th Cir. 1999]).  The subjective requirement is satisfied where the actor "was aware of and disregarded an excessive risk to inmate health or safety by failing to take reasonable measures to abate the risk." *Lopez v. LeMaster*, 172 F.3d 756, 761 (10th Cir. 1999); *Sealock*, 218 F.3d at 1209 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).

For the purposes of this Order, I assume, *arguendo*, Plaintiff can satisfy the objective prong with Dr. Fillion's recommendation that she be treated "for nuclear imaging confirmation and assessment of her visual field defects and hypoglycemic episodes."  (Pl.'s Washington Br., Ex. 2 [9/20/2002 Washington County Clinic Report].)  Nonetheless, Plaintiff's claim must fail, because her only evidence to satisfy the subjective requirement of Boulder Defendant Sheriff Epp's awareness and disregard of a risk to Plaintiff's health is her wholly conclusory assertion that all Defendants "knew" or "should have known" of her eye condition, knew that she required surgery, and failed to provide it to her.  (Compl. ¶ 28.)  Conclusory allegations are not sufficient to raise a genuine issue of fact as to a constitutional violation.  *Wise*, 666 F.2d at 1333.

Moreover, summary judgment is appropriate where there is a lack of personal participation or knowledge of a plaintiff's alleged serious medical need.  *Worrell*, 219 F.3d at 1214; *See Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is

an essential allegation in a [section] 1983 claim.")  Here, the parties do not dispute that during

Plaintiff's incarceration at the Boulder County jail, Boulder Defendant Sheriff Epp: (1) had no

involvement with Plaintiff's incarceration; (2) did not personally participate in any decision

regarding Plaintiff's medical care; and (3) never saw Plaintiff at any time.  (Boulder Defs.' Br.,

Statement of Undisputed Material Facts ¶¶ 47–49; *admitted at* Pl.'s Boulder Resp., Resp. to

Statement of Undisputed Material Facts ¶¶ 47–49.)  Plaintiff has failed to raise a genuine issue of

fact as to whether Boulder Defendant Sheriff Epp acted with deliberate indifference toward an

excessive risk to Plaintiff's health and safety.  Accordingly, Boulder Defendant Sheriff Epp is

entitled to summary judgment on Plaintiff's first claim against him in his individual capacity.

### iii.    *Boulder Defendants Boulder County Board of County Commissioners and Sheriff Epp in His Official Capacity*

Plaintiff has not made any allegations or offered any evidence to establish that Boulder

Defendant Boulder County Board of County Commissioners had any individual involvement in

the instant case, and instead premises its liability upon the actions of Dr. Schlegel and Boulder

Defendant Sheriff Epp.  (Pl.'s Boulder Resp. at 15–20.)  Thus, for the same reasons outlined

*supra* at *Analysis* § 2ai with respect to Defendant Washington County, Boulder Defendant

Boulder County Board of County Commissioners is potentially liable for Boulder Defendant

Sheriff Epp's policies and policy-related actions in operating the Boulder County jail in an official

capacity, but not in an individual capacity.  *See Worrell*, 219 F.3d at 1214; *Meade*, 841 F.2d at

1527.  Boulder Defendant Boulder County Board of County Commissioners is thus entitled to

summary judgment as to Plaintiff's first claim against it in an individual capacity.

"An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Moore v. City of Wynnewood*, 57 F.3d 924, 929 (10th Cir. 1995); *Monell*, 436 U.S. at 690 n.55 ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Lopez*, 172 F.3d at 762 (holding claim against sheriff in his official capacity was "simply another way of suing [the] [c]ounty itself"). Accordingly, I consider Plaintiff's claims against Boulder Defendants Boulder County Board of County Commissioners and Sheriff Epp in their respective official capacities conjointly.

Plaintiff alleges that Boulder Defendants had a custom, policy, or practice of acting with deliberate indifference by denying "obviously necessary" medical care to inmates at the Boulder County jail and deprived her of her right to medical care by failing to examine, treat, and care for her eye condition.  (Compl. ¶¶ 24–34.)  More specifically, Plaintiff argues that Boulder Defendants, "though their delegate, Dr. [] Schlegel, were deliberately indifferent to her serious medical needs" by failing to send her to an eye specialist sooner.  (Pl.'s Boulder Br. at 10–15.) Boulder Defendants argue that Plaintiff cannot establish that they had a policy or custom of denying medical care because Dr. Schlegel was not a policymaker for Boulder County, or if he is, he was not deliberately indifferent to Plaintiff's medical needs.  (Boulder Defs.' Reply at 5–7.)

Plaintiff asserts that Boulder Defendants delegated to Dr. Schlegel the responsibility of determining whether and when to refer inmates to specialists, and those determinations manifested a Boulder County custom or policy.  (Pl.'s Boulder Resp. at 15–16.)  It is undisputed that: (1) Boulder Defendants did not make any decisions regarding Plaintiff's or other Boulder County jail inmates' medical treatment; and (2) the Health Authority and his or her designees made all such medical decisions.  (Boulder Defs.' Br., Statement of Undisputed Material Facts ¶¶ 47, 50;

*admitted at* Pl.'s Boulder Reply, Resp. to Statement of Undisputed Material Facts ¶¶ 47, 50.)

The issue that remains is whether, as Plaintiff contends, Dr. Schlegel was a policymaker in his

capacity of making medical treatment decisions for Boulder County jail inmates.

In support of her argument, Plaintiff relies heavily upon the Supreme Court's holding in

*St. Louis v. Praprotnik*, 485 U.S. 112 (1988).  Plaintiff downplays the *Praprotnik* Courts's

express finding that "simply going along with discretionary decisions made by one's subordinates .

. . is not a delegation to them of the authority to make policy."  *Id.* at 130.  Instead, Plaintiff

argues that the *Praprotnik* Court's suggestion that a delegation of policymaking authority could

be found where "a series of decisions by a subordinate official manifested a 'custom or usage' of

which the supervisor must have been aware" is applicable in the instant case.  *Id.*  I disagree.

Plaintiff asserts that Dr. Schegel's decisions whether to refer inmates to specialists were a series

of decisions that "manifested a custom or usage of which [Boulder Defendant] Sheriff Epp was

aware."  (Pl.'s Boulder Br. at 16.)  Notably, Plaintiff focuses only on her isolated case, and does

not suggest that Dr. Schlegel customarily refused or delayed referrals to specialists.  (*Id.*, *passim.*)

Indeed, Plaintiff offers no evidence of record to identify, describe, or evince the existence of Dr.

Schlegel's purported "series of decisions."  (*Id.*)  As noted by the *Brown* Court, "[w]here a claim

of municipal liability rests on a single decision, not itself representing a violation of federal law

and not directing such a violation, the danger that the municipality will be held liable without fault

is high."[6]  *Brown*, 520 U.S. at 405–06, 408.  Moreover, other than her own conclusory allegation,

Plaintiff offers no evidence to establish that Boulder Defendant Sheriff Epp was aware of Dr.

---

[6]Plaintiff does not allege that delaying referral to a specialist is, in and of itself, a violation
of or directive to violate federal law.  (Pl.'s Boulder Resp., *passim.*)

Schlegel's series of decisions.  (Compl. ¶ 28; Pl.'s Boulder Resp., *passim*.)  Conclusory

allegations, without more, are insufficient to raise a genuine issue of fact as to a constitutional

violation.  *Wise*, 666 F.2d at 1333.  Plaintiff has not created a genuine issue of fact as to whether

Dr. Schlegel was a policymaker for Boulder County because she has not created an issue of fact

as to either the existence of Dr. Schlegel's custom or Boulder Defendant Sheriff Epp's awareness

thereof.  Therefore, Boulder Defendants are entitled to summary judgment on Plaintiff's first

claim.

> ### b.    *Failure to Train and Supervise — Boulder Defendant Sheriff Epp*

Boulder Defendants argue that Boulder Defendant Sheriff Epp is entitled to summary

judgment on Plaintiff's claim for failure to train and supervise employees.  (Boulder Defs.' Reply

at 9.)  Plaintiff alleges that Boulder Defendant Sheriff Epp is liable in both his individual and

official capacities, because he: (1) did not adequately train, supervise, and manage the

employment of the individuals hired to respond to inmates' medical emergencies; and (2) failed to

administer the Boulder County jail medical unit adequately despite his knowledge that such failure

could result in a deprivation of constitutional rights.  (Compl. ¶¶ 35–44.)  Defendant asserts that

Plaintiff cannot maintain her claim because she cannot establish that anyone under Boulder

Defendant Sheriff Epp's supervision caused her alleged deprivation and injury.  (Boulder Defs.'

Br. at 13; Boulder Defs.' Reply Br. at 9.)

To establish a claim for failure to train or supervise, Plaintiff must show that a responsible

municipal policymaker knew of either the offending occurrence or of a pattern of similar

constitutional deprivations and "failed to take adequate measures to ensure the particular right in

question or otherwise communicated a message of approval to the offending subordinates."

*Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 268 (D. Pa. 2001); *see also Meade*, 841 F.2d at

1528; *Anthony v. Baker*, 767 F.2d 657, 666 (10th Cir. 1985).  Additionally, "[a]ny failure to train

or supervise adequately, of course, must also cause the violation about which the plaintiff

complains." *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 268 (D. Pa. 2001) (citing *Simmons

v. City of Philadelphia*, 947 F.2d 1042, 1059-60 [3d Cir. 1991]).  In her response to Boulder

Defendants' motion, Plaintiff alleges that the deprivation of her rights and her injuries resulted

from Dr. Schlegel's actions.  (Pl.'s Boulder Resp. at 10–14,19–20.)  Plaintiff makes no allegations

about the actions of other Boulder County jail staff members.  (*Id*., *passim*.)  Accordingly, I limit

my analysis to Boulder Defendant Sheriff Epp's training and supervision of Dr. Schlegel.

Plaintiff argues that Boulder Defendant Sheriff Epp failed to train and supervise Dr.

Schlegel in the proper medical care and treatment of inmates.  (*Id*. at 20.)  Plaintiff's argument is

unavailing.  Plaintiff concedes that in order to maintain her claim for failure to train or supervise,

she must establish that a policymaker was deliberately indifferent to a problem.  (*Id*. at 19.)

Plaintiff fails to meet this burden.  As discussed *supra*, at *Analysis* § 2aiii, Plaintiff has presented

only conclusory allegations to establish that Boulder Defendant Sheriff Epp was aware of Dr.

Schlegel's treatment decisions.  (Compl. ¶ 28.)  Such conclusory allegations are not sufficient to

raise a genuine issue of fact as to a constitutional violation.  *Wise*, 666 F.2d at 1333.  Further, also

as discussed *supra*, at *Analysis* § 2aiii, Plaintiff has presented no evidence whatsoever to establish

that Dr. Schlegel had a custom or pattern in making decisions regarding treatment of inmates.

Consequently, it must follow that Plaintiff has failed to establish a genuine issue of fact as to

Boulder Defendant Sheriff Epp's awareness of the purported offending occurrence (Dr.

Schlegel's treatment of Plaintiff) or of a pattern of similar deprivations (Dr. Schlegel's treatment

of other inmates).  In short, Plaintiff has failed to establish sufficiently either a problem or Boulder

Defendant Sheriff Epp's awareness thereof.  Accordingly, Plaintiff has not raised a genuine issue

of fact as to Boulder Defendant Sheriff Epp's liability for failure to train in either his individual or

official capacity.  Boulder Defendants are thus entitled to summary judgment on Plaintiff's second

claim.

*3.*     *Conclusion*

     Based on the foregoing it is therefore ORDERED as follows:

     1.  Defendant Washington County's Motion for Summary Judgment (# 57) is GRANTED.

     2.  Boulder County Defendants' Motion for Summary Judgment (# 59) is GRANTED.

     3.  The clerk shall forthwith enter judgment in favor of Defendants and against Plaintiff,

dismissing all claims with prejudice.  Defendants may have their costs by filing a bill of costs

within eleven days of the date of this order.

     4.  The hearing scheduled for Friday, March 31, 2006, is VACATED.


     Dated this 17th day of March, 2006.

                       BY THE COURT:


                       s/ Edward W. Nottingham
                       EDWARD W. NOTTINGHAM
                       United States District Judge